MARC E. HANKIN (SBN: 170505)
E-Mail: Marc@HankinPatentLaw.com
ANOOJ PATEL (SBN: 300297)
E-Mail: Anooj@HankinPatentLaw.com
**HANKIN PATENT LAW, APC**
11414 Thurston Cir.
Los Angeles, CA 90049
Telephone: (310) 979-3600

Attorneys for PLAINTIFF,
**MMAS RESEARCH LLC**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MMAS RESEARCH LLC, a Washington limited liability company,

Plaintiff,

v.

Daiichi Sankyo Company, Limited; IQVIA Services Japan K.K.; IQVIA Holdings Inc.; Daiichi Sankyo UK Limited; Morisky Medication Adherence Research LLC; Donald E. Morisky; DOES 1 through 10, inclusive,

Defendants.

Case No. 2:26-cv-10110

**COMPLAINT FOR DAMAGES**

**1. FRAUD IN THE INDUCEMENT**
**2. RESCISSION**
**3. BREACH OF CONTRACT**
**4. 17 U.S.C. § 501 – INFRINGEMENT OF COPYRIGHT**
**5. 17 U.S.C. § 1202 – FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION**
**6. MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT (DTSA) AND STATE LAW**
**7. 15 U.S.C. § 1125(A) – FALSE ADVERTISING**
**8. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND BUSINESS EXPECTANCY**
**9. DECLARATORY RELIEF**

**DEMAND FOR JURY TRIAL**

Plaintiff MMAS RESEARCH LLC ("MMAS Research," or "Plaintiff") for its claims for relief against Defendants Daiichi Sankyo Company, Limited ("DS JAPAN"); IQVIA Services Japan K.K. ("IQVIA JAPAN"); IQVIA Holdings Inc. ("IQVIA US"); Daiichi Sankyo UK Limited ("DS UK"); Morisky Medication Adherence Research LLC ("MMAR"); Donald E. Morisky ("MORISKY"); and DOES 1 through 10, inclusive ("DOES") (collectively herein "Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1. This action arises, in part, under 17 U.S.C. § 501 – Infringement of Copyright, and under 17 U.S.C. § 1202, a section created by the Digital Millennium Copyright Act, conferring federal question jurisdiction under 17 U.S.C. § 101, *et seq.*, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

2. This action arises, in part, under the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836, conferring federal question jurisdiction.

3. This action arises, in part, under the Lanham Act, 15 U.S.C. § 1125(a), conferring federal question jurisdiction.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because: (a) a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; (b) the unlawful acts of Defendants complained of herein have been committed within this District and have, had, or will have had effect in this District; and (c) the written agreements identified and described more thoroughly below, by their terms, stipulated to jurisdiction and venue in this District.

5. Section 18 of the September 2021 Settlement Agreement described below provides that it is governed by California law, that any action to enforce it "shall be brought exclusively in the federal or state courts of the State of California," and that "[a]ll Parties agree to submit to the jurisdiction of such courts over each of them personally in connection with such litigation and waive any objection to venue in

such courts and any claim that such forum is an inconvenient forum."

6. Section 11.G of the September 18, 2018 Morisky Widget License between Plaintiff and Defendant DS UK provides that "[a]ll disputes arising under this license contract will be in the Los Angeles California Courts."

7. The exclusive-jurisdiction clause of the separate settlement agreement between Plaintiff and Daiichi Sankyo UK Limited dated November 18, 2021 does not displace Section 11.G as to the claims pleaded here. That clause governs the dispute compromised by that settlement. The claims against Daiichi Sankyo UK Limited in this action arise from conduct occurring after that settlement was executed, and from the 2018 License, which that settlement did not terminate.

8. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because one or more Defendants are amenable to personal jurisdiction in this District.

**THE PARTIES**

9. Plaintiff, MMAS RESEARCH LLC (MMAS) is a Washington limited liability company in good standing.

10. Steven Trubow (Trubow) is the CEO of MMAS.

11. Plaintiff is the owner of the "MMAS RESEARCH WIDGET CODE" (the "Morisky Widget"), registered under United States Copyright Registration No. TX 8-816-517 (Registration date December 3, 2019) (the "Morisky Widget Copyright").

12. On December 3, 2019, Dustin Machi, the author of the Morisky Widget source code named on the Certificate of Registration, executed a written Copyright Assignment effective the same date, assigning to Plaintiff all worldwide right, title and interest in and to the work, including the copyrights therein and the right to all claims for any past, current or future infringement. The work assigned is identified as the MMAS Research Widget Code, its architecture, output screens, graphical user interfaces and associated materials.

13. On information and belief, Defendant Daiichi Sankyo Company, Limited (DS JAPAN) is located at 3-5-1 Nihonbashi-honcho, Chuo-ku, Tokyo 103-8426, Japan.

14. On information and belief, Defendant IQVIA Services Japan K.K. (IQVIA JAPAN) is located at 4-10-18 Takanawa, Minato-ku, Tokyo 108-0074, Japan. On information and belief, IQVIA JAPAN operates through its local entities and subsidiaries, including the IQVIA Japan Group, and is wholly owned by its United States parent corporation, IQVIA Holdings Inc., which is headquartered in North Carolina and listed on the New York Stock Exchange.

15. On information and belief, Defendant IQVIA Holdings Inc. (IQVIA US) is a United States corporation headquartered in North Carolina and listed on the New York Stock Exchange, and is the ultimate parent of IQVIA JAPAN. On information and belief, IQVIA US did not merely own IQVIA JAPAN but directly participated in the conduct alleged: the re-scoring exercise and the correspondence concerning it were handled through IQVIA's United States corporate legal function, including its Assistant General Counsel Laura Kibbe, whose communications are described below. On information and belief, IQVIA US and IQVIA JAPAN acted in these matters as a single enterprise, with IQVIA US directing and participating in the conduct, such that the acts of IQVIA JAPAN in these matters are also the acts of IQVIA US.

16. On information and belief, Defendant Daiichi Sankyo UK Limited (DS UK) is a company registered in England and Wales under number 01998736, located at Building 4, Uxbridge Business Park, Sanderson Road, Uxbridge UB8 1DH, United Kingdom.

17. On information and belief, Defendant Morisky Medication Adherence Research LLC (MMAR) is a Nevada limited liability company whose Managing Member is Philip Morisky, and is located at 130 Granada Ave, Long Beach, CA 90803-3251.

18. Defendant Donald E. Morisky (MORISKY) is the President of MMAR. MORISKY was formerly a member of Plaintiff MMAS Research LLC and held a fifty percent ownership interest in the Morisky Widget. By email dated February 14, 2019, Trubow wrote to MORISKY: “If you want to withdraw from MMAS Research LLC you are free to do so, but you will give up your 50% ownership in the Morisky Widget.” By email dated June 21, 2019, MORISKY accepted that offer in writing, quoting its terms and stating that the offer “is accepted,” and further stating: “I hereby withdraw as a member and from all other of my roles on behalf of MMAS Research, LLC, effective June 21, 2019.” MORISKY confirmed that withdrawal in an Amended Report he executed under penalty of law on June 25, 2019 and filed with the Washington Secretary of State, which was filed and became effective July 5, 2019, and which records that “Donald Morisky is no longer a member or governor” of Plaintiff. MORISKY has held no ownership interest in the Morisky Widget since June 21, 2019, that date being five months before the author of the Morisky Widget source code assigned it to Plaintiff and before Registration No. TX 8-816-517 issued.

19. Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 10, inclusive (the “Doe Defendants,” and collectively with the above-named defendants, the “Defendants”), are other parties not yet identified and are the subject of this lawsuit. The true names, whether corporate, individual, or otherwise, of DOES 1 through 10, inclusive, are presently unknown to Plaintiff, which therefore sues Defendants by such fictitious names, and will seek leave to further amend this complaint to show their true names and capacities when their identities have been determined.

20. Plaintiff is informed, believes, and thereupon alleges that Doe Defendants were, and are, in some manner responsible for the actions, acts, and omissions alleged, and for the damage caused by Defendants and are, therefore, liable for the damage caused to Plaintiff.

21. Plaintiff is informed, believes, and thereon alleges that, at all relevant times, Defendants controlled and participated in the acts alleged herein.

## FACTS RELEVANT TO ALL ALLEGATIONS

22. MORISKY was a co-plaintiff with Plaintiff in the action captioned *MMAS Research, LLC and Dr. Donald E. Morisky v. The Charité, et al.*, No. 2:21-cv-01406-MWF-JPR (C.D. Cal.). On November 2, 2022, MORISKY executed, under penalty of perjury pursuant to 28 U.S.C. § 1746, a Request for Dismissal With Prejudice of Dr. Donald E. Morisky Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), which was filed in that action on November 7, 2022 as Docket Entry 48 (the "Morisky Declaration"). MORISKY signed the Morisky Declaration personally.

23. In the Morisky Declaration, MORISKY swore that he is "the author and copyright owner" of the MMAS-4 and the MMAS-8, and that the December 4, 2020 agreement acknowledged him to be "the sole and exclusive owner of the federal copyrights … together with any related trademarks, copyrights, derivatives." He swore further that those rights "include the Morisky Widget."

24. MORISKY swore in the same declaration: "MMAS registered the Morisky Widget with the Copyright Office without my consent, and in violation of my now long-revoked original license to MMAS. As such, MMAS has no rights to or license in … the Morisky Widget copyrights." He described himself in that declaration as "the sole and exclusive copyright owner of all the copyrights at issue in this matter." Each of those sworn assertions rests upon the December 4, 2020 agreement.

25. On March 13, 2024, the United States Court of Appeals for the Ninth Circuit, in *MMAS Research, LLC v. The Charité*, No. 23-55202 (9th Cir. Mar. 13, 2024) (unpublished memorandum disposition, not precedent except as provided by Ninth Circuit Rule 36-3; the judgment of dismissal was affirmed on other grounds), construing the same December 4, 2020 agreement described above, held that the district court had erred in concluding that Plaintiff lacked standing to sue for

infringement of the Morisky Widget copyright, and held that Plaintiff remains the registered owner of the Morisky Widget. The Court held:

"The district court erred in concluding that MMAS lacked standing to sue for copyright infringement. The district court found that a 2020 preliminary settlement agreement from a separate lawsuit between MMAS and Dr. Donald Morisky transferred the Morisky Widget from MMAS to Dr. Morisky. But that agreement—which simply outlined terms MMAS and Dr. Morisky "desire[d] to consent and agree to" sometime in the future—was never finalized. MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget."

26. The Court further held that because the CR2A was a private contract between MORISKY and Plaintiff, and because it was never finalized, it was not an abandonment of Plaintiff's right to sue for infringement of the Morisky Widget copyright.

27. MORISKY thus swore to a United States District Court that he owned the Morisky Widget and that Plaintiff had no rights in it. Sixteen months later the United States Court of Appeals for the Ninth Circuit, construing the same December 4, 2020 agreement upon which every one of those sworn assertions depends, held that the agreement was never finalized, that Plaintiff never transferred its copyright, and that Plaintiff remains the registered owner of the Morisky Widget. Plaintiff is and remains the sole owner of the Morisky Widget and Registration No. TX 8-816-517.

28. To protect the integrity of the Morisky Widget and protect against counterfeiting, infringing, or unauthorized use, Plaintiff filed for and obtained a Certificate of Registration for the Morisky Widget from the United States Copyright Office.

29. The Morisky Widget copyright includes the source code for the Morisky Widget, which itself includes the Morisky Widget diagnostic assessments, MMAS-4 and MMAS-8, together with the validated translations deposited with that

registration.

30. Plaintiff has complied in all respects with the Copyright Act and Digital Millennium Copyright Act, as well as all other laws governing copyrights, as to the Morisky Widget copyright.

31. On information and belief, each 2006 MMAS-8 and MMAS-4 test provides a single score of raw medication adherence only.

32. On information and belief, each 2017 Morisky Widget MMAS-8 and MMAS-4 test provides 3 quantitative scores: raw medication adherence, intentional non-adherence, and unintentional non-adherence. The distinction the Morisky Widget preserves is one the instrument's own author has acknowledged is essential: reducing the scale to a collapsed total loses the information the assessment depends upon. The flat 0–8 integer totals reported in the Publications described below discard that information.

33. On information and belief, Plaintiff permits the use of the Morisky Widget, licensing its copyright and diagnostic assessments, only through a licensing program that includes training and certification on the use of the Morisky Widget MMAS-8 and MMAS-4.

34. All Morisky Widget licensees are required to score and code MMAS-4 and MMAS-8 tests in the Morisky Widget and to be trained and certified on the use of the Morisky Widget before administering it to patients.

35. On information and belief, coding and scoring criteria of the MMAS are trade secrets of Plaintiff and as such can NEVER be divulged in any publication, presentation, or website without prior written permission from Plaintiff.

36. At all times material to the communications described at paragraphs 37 through 43, MORISKY was a fifty-percent member of Plaintiff and its co-principal in the Morisky Widget licensing program. As pleaded at paragraph 18, MORISKY surrendered that interest effective June 21, 2019, and Plaintiff is and remains the sole owner of the Morisky Widget and of Registration No. TX 8-816-517. The

communications described below were made in MORISKY's capacity as a member of Plaintiff and set forth the terms of Plaintiff's licensing program.

37. On knowledge and belief, between June and July 2017 MORISKY, writing from his electronic mail account at the University of California, Los Angeles and addressing or copying Trubow, sent a series of substantially identical communications to prospective licensees in Asia and elsewhere stating the terms on which the MMAS-4 and MMAS-8 could lawfully be used.

38. On July 7, 2017 and again on July 24, 2017, MORISKY stated the cutover in identical terms: "Beginning January 2017, all data collection of the MMAS adherence scales must use the Morisky Widget, which is a digital data entry process using any digital electronic device." Each of those communications further stated: "All MMAS-8 and MMAS-4 licenses are administered through the Morisky Widget."

39. On June 12, 2017, MORISKY wrote: "never again will the MMAS be administered by paper and pencil, as we now have a digital device called the Morisky Widget. The Morisky Widget automatically calculates the score and the reasons why the patient is non-adherent." In the same communication he wrote that he was "not giving individuals a license for use of my copyrighted intellectual property" and that "[o]nly Universities and Institutions can now use the MMAS-8."

40. On June 28, 2017, in the same series, MORISKY described what the Morisky Widget produces: "The Morisky Widget automatically scores and reports adherence levels & the risk of intentional/unintentional non-adherence into your database." He wrote in the same communication that "The Morisky Scale is not only a number but a diagnostic assessment of a critical health behavior, namely adherence to a medical recommendation," and that "[t]he results of the Morisky Widget identify specific reasons why the patient does not adhere to their medical regimen." The three outputs MORISKY there described—the adherence level, the risk of intentional non-adherence and the risk of unintentional non-adherence—are the

three quantitative scores pleaded at paragraph 32 above, and are the outputs the Publications described below do not report.

41. On July 7, 2017, MORISKY wrote to a prospective licensee: "If your University is interested in obtaining a Morisky Widget MMAS License, please have them contact Mr. Trubow, otherwise, you are forbidden from using the MMAS-8." Later in the same communication he wrote: "If you would like to obtain legal permission to use the MMAS, Dr. Morisky licenses all uses of the MMAS through the Morisky Widget. (NO EXCEPTIONS)."

42. On July 20, 2017, MORISKY directed a prospective licensee to send its responses "to me and to Mr. Steve Trubow, my Chief Investigation Officer who is responsible for putting together the Morisky Widget."

43. In the same series MORISKY stated the training, certification and institutional-licensee requirements: "All license will be trained and certified on the Morisky Widget"; "We only license the Morisky Widget to organizations never individuals"; and "All users of the MMAS have to apply for a perpetual and indefinite term Morisky Widget MMAS License."

44. The terms recited at paragraphs 38 through 43 are the terms Plaintiff's licenses embodied: that all MMAS tests be scored and coded within the Morisky Widget; that only trained and certified personnel use the instrument; that licensees be institutions rather than individuals; and that the license be perpetual and of indefinite term. Those were the uniform terms of Plaintiff's licensing program more than a year before DS UK entered the 2018 License, and were not terms peculiar to any one licensee.

45. MORISKY is a Defendant in this action and is the person from whom MMAR claims its asserted rights in the MMAS-4 and MMAS-8 and in their coding and scoring. The communications described at paragraphs 37 through 43 are MORISKY's own written statements, made while he was a member of Plaintiff, that the Morisky Widget was the exclusive lawful channel for administering, scoring and

coding the MMAS-4 and MMAS-8, that no use of the MMAS-8 outside a Morisky Widget license was permitted, and that Trubow was the person responsible for building the Morisky Widget. Those statements are irreconcilable with the phase-out campaign pleaded below and with the representation that MMAR, and not Plaintiff, was the source of a license to the instrument and to its coding and scoring.

## A. THE RETRACTED VALIDATION

46. On information and belief, on August 21, 2021, Wiley Online Library published a letter to the editor by Dr. Michael S. Ortiz in the Journal of Clinical Hypertension, the publisher of the 2008 MMAS-8 validation article. Dr. Ortiz concluded that "the MMAS-8 scores may be no more accurate in detecting patients with uncontrolled BP, than tossing a coin to decide." The letter appears at (2022) 24 J. Clin. Hypertens. 1390–1391, DOI 10.1111/jch.14353.

47. On information and belief, on September 7, 2021, MORISKY prepared and circulated a written defense of the 2008 validation article responding to Dr. Ortiz. In that written defense MORISKY asserted, as the author of the instrument, that the scale "should not be degraded" to a reduced yes/no form because doing so "would underestimate values due to loss of information," the "general consensus" being "don't do it."

48. On information and belief, on August 18, 2023, the Journal of Clinical Hypertension retracted the 2008 validation article. The Editor wrote, "Following an investigation by the Journal, which included an independent statistical review, it was concluded that the results of the article were misleading due to issues regarding the sensitivity and specificity of the medical adherence scale [MMAS-8] used. As a result, the Journal no longer has confidence in the reported conclusions and has retracted the article." Retraction Statement, (2023) 25(9) J. Clin. Hypertens. 889, DOI 10.1111/jch.14718.

## B. THE CR2A AND MORISKY'S PHASE-OUT TRIGGER

49. On December 4, 2020, Plaintiff, Trubow, MORISKY, Susan Morisky,

Philip Morisky, Marty Morisky and MMAR executed a settlement agreement under Washington Civil Rule 2A (the "CR2A"), dated on its face "this 4th day of December 2020."

50. On information and belief, and as MORISKY's own counsel later described its terms to third parties, the CR2A required Plaintiff to assign the Morisky Widget to MORISKY by a deadline extended by agreement to September 3, 2021, and granted Plaintiff a limited license to pursue infringement claims against third parties listed on Exhibit 3 thereto who had infringed prior to December 6, 2020, including the power to grant retroactive licenses in connection with settlements of enforcement actions, for a term expiring September 3, 2023.

51. On information and belief, in CR2A Section II #7, MMAR agreed to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect.

52. On information and belief, the CR2A further provides, at page 6, that "MMAR shall indemnify MMAS Research, LLC and Steven Trubow from any claims by licensees arising from issues related to the access to or utilization of the Morisky Widget." MMAR thereby assumed, as against Plaintiff and Trubow, the risk of any claim asserted by a Morisky Widget licensee arising from that licensee's access to or use of the Morisky Widget. Daiichi Sankyo is identified as a Morisky Widget licensee on Exhibit 4 to the CR2A.

53. Section II #2 of the CR2A provides that Plaintiff and Trubow will receive fifty-five percent and MORISKY forty-five percent of the net proceeds generated from any Claim Settlement; that all proceeds received from a third party shall be deposited into an attorney client trust account for the benefit of the parties; and that the net proceeds shall be disbursed from that trust account to the parties in accordance with their respective percentages, together with a financial accounting, within thirty days of the attorney's receipt.

54. Section II #4 of the CR2A provides that MORISKY "authorizes MMAS

Research, LLC through its attorney(s) to prosecute the Claim Settlements listed in Exhibit 3 from which a Claim Settlement may be sought related to the MMAS-4, MMAS-8, the Morisky Widget and any related intellectual property," and that he agrees to cooperate in any existing investigations, claims and ensuing litigation.

55. Section II #1 and Section II #7 of the CR2A are expressed in the future tense. Plaintiff "will assign" the Morisky Widget to MORISKY, and MMAR "agrees to provide full access to the Morisky Widget and support as needed to all licensees as long as their licenses to the Morisky Widget are in effect." No assignment was ever made, and MORISKY and MMAR did the opposite of what Section II #7 promised: within twelve months they announced publicly and to Plaintiff's licensees that the Morisky Widget was being phased out of existence.

56. On information and belief, the ANAFIE Registry claim against DS JAPAN and IQVIA JAPAN described below is item 173 on Exhibit 3 to the CR2A and falls within the enforcement authority MORISKY's counsel has conceded Plaintiff held.

57. On January 25, 2021, MORISKY executed a written Infringement Authorization, countersigned the same day by his counsel F. Christopher Austin, Esq. of Weide & Miller, Ltd.

58. The Infringement Authorization states, in full: "In accordance with the December 4, 2020, agreement between Dr. Morisky and Steve Trubow and MMAS Research, LLC, I, Dr. Donald E. Morisky hereby authorize Steve Trubow, MMAS Research, LLC, or any attorney working on their behalf or designated by either of them to represent my interests in pursuing, settling and litigating any claim I have for infringement of my intellectual property rights to the MMAS-4, MMAS-8, and Morisky Widget, as well as contract claims related to licenses issued to use the MMAS-4, MMAS-8 or Morisky Widget, accruing on or before December 3, 2020."

59. On information and belief, Peter J. Hoeller, Esq. of Barta, Jones & Foley, P.C. was an attorney working on behalf of Plaintiff and Trubow within the

meaning of the Infringement Authorization. Mr. Hoeller acted for MORISKY and for Plaintiff jointly in negotiating both the Settlement Agreement described below and the separate settlement with DS UK described below.

60. Both settlements fall within the authority MORISKY granted. The 2018 License between Plaintiff and DS UK was issued on September 18, 2018, and the ANAFIE Registry conduct complained of occurred before December 3, 2020. Both are therefore "contract claims related to licenses issued to use the MMAS-4, MMAS-8 or Morisky Widget, accruing on or before December 3, 2020" within the meaning of the Infringement Authorization.

61. Trubow and Mr. Hoeller performed the Infringement Authorization according to its terms. They pursued, negotiated and settled the very claims it identified, in the manner it prescribed, and MORISKY was a signatory to each resulting settlement.

62. September 3, 2021 passed without any assignment of the Morisky Widget. MORISKY has since identified that date, publicly and through counsel, as the event that entitled him to the Morisky Widget and that caused him to phase it out.

63. That assertion is wrong, and the CR2A itself shows why. Section II #17 of the CR2A provides that the parties would enter into a long-form Final Agreement "formalizing all the terms set forth herein" within sixty days of execution, and that if they could not agree, a neutral mediator of the Seattle office of JDR would be appointed as an "Appointed Decider" to produce and sign the Final Agreement on behalf of the parties, which would then be binding whether or not the parties executed it.

64. No Final Agreement was ever entered into. No Appointed Decider was ever identified or appointed. The Final Agreement contemplated by Section II #17 does not exist.

65. The assignment obligation MORISKY invokes was contingent upon

that Final Agreement. Section I.E of the CR2A states that the terms are "to be fully set forth in the Final Agreement." Section II #7 defines the Transition Period as commencing upon execution of the CR2A and concluding "within 60 days of the date the Final Settlement Agreement becomes binding on the Parties in accordance with Paragraph 17." Because no Final Agreement ever became binding, the Transition Period from which MORISKY derives his September 3, 2021 date was measured from an event that never occurred.

66. In any event, an unperformed promise to assign a copyright is not an assignment. No instrument transferring the Morisky Widget from Plaintiff to MORISKY has ever been executed. MORISKY's own action in the Western District of Washington seeks an order compelling such an assignment, which concedes that none has been made.

67. The United States Court of Appeals for the Ninth Circuit so held. As set out above, the Court held that the CR2A "simply outlined terms MMAS and Dr. Morisky 'desire[d] to consent and agree to' sometime in the future—was never finalized," that "MMAS thus never transferred its copyright and remains the registered owner of the Morisky Widget," and that because the CR2A was a private contract and was never finalized it was not an abandonment of Plaintiff's right to sue.

68. MORISKY and MMAR nevertheless represented to Plaintiff's licensees, to Plaintiff's contract counterparties, and to the public that the September 3, 2021 date had vested the Morisky Widget in MORISKY and that Plaintiff had no authority to license it. Those representations were false when made and remain false.

## C. THE ANAFIE REGISTRY AND THE 2021 SETTLEMENT AGREEMENT

69. The ANAFIE Registry (All Nippon Atrial Fibrillation In the Elderly; UMIN000024006) is a prospective observational study of more than 30,000 Japanese patients aged 75 and older with non-valvular atrial fibrillation, sponsored

and funded by DS JAPAN, with IQVIA JAPAN assisting in its conduct.

70. On information and belief, a license dated July 19, 2016 authorized 1,500 MMAS-8 tests in the ANAFIE Registry. DS JAPAN and IQVIA JAPAN exceeded that number and admitted having done so, and when asked how the tests had been scored produced an unpublished protocol setting out incorrect scoring.

71. On August 11, 2021 a draft complaint was prepared and, on August 12, 2021, delivered to IQVIA JAPAN and DS JAPAN. Settlement negotiations followed, conducted on behalf of both MORISKY and Plaintiff by common counsel.

72. On September 7, 2021, four days after his own phase-out trigger, MORISKY wrote to that common counsel: “There is no deal unless I use my own digital platform for rescoring the original agreement is between Daiichi and me, no one else. No widget was used, there is basis for requiring its use. Trubow does not speak for me in this settlement to the extent I allow him, he should not even be a signatory.”

73. On information and belief, counsel recorded the opposing positions the same day: MORISKY “will not sign the settlement as it stands with the re-scoring done in the Widget. Instead, you want to handle the re-scoring in your MMAR Platform. Steve said he would refuse to sign if the re-scoring is not done in the Widget.”

74. On September 8, 2021, MORISKY instructed counsel to remove Plaintiff from the settlement agreement altogether, writing, “I should be the only signatory on the settlement as Steve was not on the original license agreement.”

75. On September 24, 2021, while the settlement was being finalized and while his counsel and Plaintiff’s counsel were the same person, MORISKY filed a federal action against MMAS Research LLC and Trubow in the United States District Court for the Western District of Washington, No. 2:21-cv-01301, seeking a declaration that he owns the Morisky Widget and an order compelling its assignment to him.

76. The Settlement Agreement is styled as entered into on "September __, 2021." The day is left blank and no date appears beside any signature. DS JAPAN and IQVIA JAPAN signed first; the fully executed counterpart was scanned in Japan on September 28, 2021.

77. On October 11, 2021 at 9:46 a.m. MORISKY wrote, "I will sign off on this Settlement Agreement … Please send me the final settlement document for my signature." At 10:41 a.m. the same day he returned it, writing, "attached please find the signed agreement." MORISKY executed the Settlement Agreement on October 11, 2021, seventeen days after suing Plaintiff to take the Morisky Widget.

78. The Settlement Agreement names four parties: IQVIA JAPAN, DS JAPAN, MORISKY, and MMAS Research LLC. Section 1 provides for payment of $55,000. Section 2 obliges MORISKY to assist IQVIA and DS in "re-scoring, re-coding, and certifying all MMAS-8 tests in Morisky's MMAR digital platform for $8,000," and to assist in reviewing any draft publication concerning the Study for citation accuracy and in drafting or approving any necessary corrigenda, with expenses prepaid before re-scoring begins.

79. Section 3 provides that the parties release one another "[u]pon receipt and clearing of the payment referred to in Paragraphs 1 and 2." On information and belief, the Paragraph 2 prepayment was never made and the Section 2 work was never performed.

80. On information and belief, the final sentence of Section 3, releasing DS from future liability by Plaintiff, was drafted and inserted by MORISKY, as his counsel later confirmed in writing.

81. On information and belief, the recital in Section 2 that "no MMAS Research Widget software was used by DS or IQVIA during the study, nor was or is there any requirement to use the Widget as a corrective measure for this infringement" is MORISKY's language, extracted by refusing to sign, over Plaintiff's recorded objection. Plaintiff does not concede its truth.

### D. THE PHASE-OUT CAMPAIGN

82. On October 30, 2021, nineteen days after signing, MORISKY published a notice on www.moriskyscale.com under the heading "Significant legal developments with phasing-out the Morisky Widget," which began, "Effective November 2021, I have phased-out the Morisky Widget." The notice announced that "[w]e are transitioning all Morisky Widget users who request it to a new upgraded HIPAA and GDPR compliant digital format - the MMAR digital platform - within the next 45 days," and was signed "Dr. Donald Morisky, President MMAR, LLC."

83. On November 16, 2021, seventeen days after publishing that notice, MORISKY executed a separate settlement agreement with DS UK in which he jointly warranted, at clause 4.2, that no changes had been made to the test scoring and coding of the Morisky Widget.

84. On November 25, 2021, Takashi Takahashi of IQVIA JAPAN wrote directly to Trubow, copying personnel of DS JAPAN and IQVIA JAPAN, thanking Plaintiff for "your understanding for the settlement agreement for MMAS-8 license in the ANAFIE Registry," stating that "[f]or the next step, we would like to discuss with you how to proceed the creation of paper and other related action," asking "[c]ould you please tell me who I should contact for the next step?", and reporting that "[w]e are currently in discussions with Daiichi-Sankyo Japan how to correct the strategy based on our settlement."

85. On information and belief, the CR2A established a full year before the communications described below that Daiichi Sankyo's relationship to the instrument ran through the Morisky Widget licensed from Plaintiff. Exhibit 4 to the CR2A — Plaintiff's roster of Morisky Widget licensees, incorporated into the settlement MORISKY and MMAR executed — identifies "Daiichi-Sankyo" as a Morisky Widget licensee. Exhibit 3 to the CR2A lists, among the Claim Settlements MORISKY authorized Plaintiff to prosecute, both a "Daiichi Sankyo Morisky Widget License" claim (item 30) and the ANAFIE Registry claim of the study's

corresponding author, Dr. H. Inoue (item 173). Section II #3 of the CR2A provided that a Claim Settlement of those very claims "may include a retroactive license for the Morisky Widget and may include corrective measures to be performed by the licensee with the assistance of Steve Trubow."

86. On information and belief, the corrective remedy MORISKY would shortly disclaim to Daiichi — re-scoring through the Morisky Widget, assisted by Trubow — was therefore the very remedy his own December 4, 2020 agreement had prescribed, and the Daiichi claims were claims that Section II #4 of the CR2A and the January 25, 2021 Infringement Authorization had placed within Plaintiff's authority to prosecute. The December 3 and December 5, 2021 communications that follow — asserting that the Morisky Widget was defunct, that Daiichi should transition to the MMAR platform, and that Plaintiff had no authority to license the Widget — were thus contradicted by MORISKY's own documents of December 2020 and January 2021.

87. On December 3, 2021, F. Christopher Austin, writing as "counsel for Dr. Morisky and MMAR LLC," sent an email marked "Importance: High" under the subject line "Morisky Widget and MMAR Platform for Daiichi UK and Japan" to the ANAFIE office at IQVIA and to DS UK's solicitors, copied to personnel of Daiichi Sankyo Europe GmbH in Munich, to Dr. Ravi Pawa of DS UK, and to personnel of DS JAPAN in Tokyo. The email asserted that Plaintiff was in breach of an obligation to assign the Morisky Widget "by no later than September 3, 2021," and that "[a]s noted in MMAR's Notice, Dr. Morisky has transitioned away from the Morisky Widget in favor of the MMAR Digital Platform."

88. On December 5, 2021, MORISKY wrote to the same distribution under the same subject line, signing as "President, MMAR, LLC." He wrote that "MMAR, LLC., (managed by my sons Philip and Marty and I) is the sole owner/licensor of the MMAS 4 and 8 scales"; that "[t]he illegally copyright-registered Morisky widget will be phased out of existence in the very near future"; that "[a]ll widget licensees,

with their consent, will be transitioned to my own secure MMAR digital platform"; and that "I will contact Daiichi Japan directly to fulfill MMAR's obligation of reporting in a secure manner, and assisting Daiichi staff in developing a corrigendum for publication."

89. On information and belief, the obligation to assist with re-scoring and corrigenda was MORISKY's own, personally, under Section 2 of the Settlement Agreement, for which he was to be paid $8,000. He described it to the counterparty as "MMAR's obligation."

90. On information and belief, neither the December 3 nor the December 5, 2021 email identified any assignment of any right from MORISKY to MMAR. Both confirmed that Registration No. TX 8-816-517 stood in Plaintiff's name and that no assignment to MORISKY had occurred.

91. On December 8, 2021, Laura Kibbe, Assistant General Counsel of IQVIA, wrote to counsel under the subject "Rescoring exercise," reporting that on a recent telephone call MORISKY and Trubow had been "on the phone with IQVIA and DS reps and they started berating each other," that "Steve asserted that using Dr. Morisky would violate privacy and IP regulations," and that "[t]hey need to get the exercise complete and cannot with such discord between Morisky and MMAS."

92. On information and belief, MMAR thereafter published a series of dated notices on www.moriskyscale.com, a commercial website whose navigation bar offers "STUDENT PRICING" and "MMAS LICENSE PRICING," under a page titled "Predatory Pricing from Steve Trubow," as follows:

(a) December 26, 2021: "Effective immediately, the Morisky Widget is being phased out of existence."

(b) February 7, 2022: a reproduction of a United States Patent and Trademark Office record for trademark application Serial No. 87775097, MORISKY WIDGET, showing "Status 602 - Abandoned-Failure To Respond Or Late Response," status date June 18, 2019, circled in red.

(c) February 17, 2022: "Steve Trubow is not authorized to license MMAS 4&8 and defunct Morisky widget … DO NOT contact Trubow to avoid liability claims."

(d) February 19, 2022: "Trubow is not authorized to issue perpetual Morisky widget licenses. Buyers beware."

(e) May 21, 2022, under the banner "MORISKY WIDGET PHASE OUT" and the headline "Morisky Widget is DEAD": "Any use by anyone of the Widget must immediately contact us to transfer their services to the MMAR platform, or they will be subject to potential copyright and trademark infringement actions against them."

93. On information and belief, the trademark record MMAR reproduced concerns an abandoned trademark application and says nothing about Copyright Registration No. TX 8-816-517, which stands in Plaintiff's name and is unaffected by the abandonment of a trademark application. MMAR presented it as proof that the Morisky Widget was legally dead. That representation was false.

94. On April 21, 2022, Philip Morisky, as Chief Executive Officer of MMAR, sent Ms. Kibbe a letter from Mr. Austin dated the same day, headed "Infringement Against MMAS Research, LLC and Steven Trubow," stating that neither Trubow nor Plaintiff "has any lawful right to use or license the MMAS-4 Scale or the MMAS-8 Scale"; that Plaintiff's Morisky Widget registration "is an unlawfully obtained derivative"; and, in boldface capitals, that "ANY PERSON THAT USES OR LICENSES THE MORISKY WIDGET, MMAS-4 SCALE OR MMAS-8 SCALE WITHOUT THE EXPRESS WRITTEN AUTHORIZATION OF DR. MORISKY WILL BE IN VIOLATION OF U.S. FEDERAL COPYRIGHT LAW FOR COPYRIGHT INFRINGEMENT." On information and belief, MMAR also published that letter on www.moriskyscale.com.

95. On information and belief, Ms. Kibbe replied on April 25, 2022, "we settled this matter last year and Dr. Morisky is to do the rescoring. IQVIA has no

interest in any ongoing dispute between Mr. Trubow and Dr. Morisky." Mr. Austin answered, "It does not require any action by IQVIA. Dr. Morisky will continue to honor the settlement agreement negotiated by Mr. Hoeller." Ms. Kibbe responded, "Thanks Chris. I'll inform my business."

96. On information and belief, as of April 25, 2022, more than six months after execution, both sides confirmed in writing that the Section 2 re-scoring remained unperformed. It has never been performed.

**E. THE ANAFIE PUBLICATION**

97. On information and belief, on October 1, 2023, six weeks after the retraction of the 2008 validation article, DS JAPAN and IQVIA JAPAN published the ANAFIE subcohort study: Akao M, et al., "Comprehension of Nonvalvular Atrial Fibrillation and Anticoagulant Adherence in Elderly Patients in a Subcohort Study of the All Nippon Atrial Fibrillation in the Elderly Registry," (2023) 204 Am. J. Cardiol. 159, DOI 10.1016/j.amjcard.2023.06.086 (the "ANAFIE Publication").

98. On information and belief, three of the ANAFIE Publication's authors are DS JAPAN employees, including Tetsuya Kimura, who executed the Settlement Agreement for DS JAPAN, and Yoshiyuki Morishima, a recipient of both the November 25, 2021 and the December 3 and 5, 2021 emails. IQVIA JAPAN is acknowledged for its support in conducting the Registry. The same DS JAPAN employee, Yoshiyuki Morishima, who received the December 3 and 5, 2021 emails — themselves addressed to Daiichi UK — instructing the recipients to abandon the Morisky Widget and to look to MMAR, and not to Plaintiff, for a license, was a named author of the ANAFIE Publication that published the flat 0–8 scoring, cited the retracted 2008 validation without disclosing the retraction, and directed its readers that a license was available from MMAR. A single communication addressed to Daiichi UK was thus received, and acted upon, within DS JAPAN. DS JAPAN therefore published with knowledge of Plaintiff's competing claim of right, and its conduct is bound together with that of DS UK as one course of dealing.

99. On information and belief, on the face of the ANAFIE Publication the MMAS-8 scoring and coding criteria are published verbatim, patients being classified as low adherence at a score below 6, medium adherence at 6 or above and below 8, and high adherence at 8; adherence is reported as a flat 0–8 integer total and not through the Morisky Widget's three quantitative scores; Figure 6 tabulates MMAS-8 scores in quarter-point bands; readers are twice directed that "[a] license agreement is available from MMAR, LLC., www.moriskyscale.com" and not from Plaintiff; and the 2008 validation is cited with no mention anywhere of its retraction.

100. On information and belief, a corrigendum published on November 15, 2023 at (2023) 207 Am. J. Cardiol. 524 corrected a single phrase and an author affiliation and addressed nothing concerning the MMAS-8, its scoring, its attribution, or its retraction.

**F. DAIICHI SANKYO UK**

101. On September 18, 2018, Defendant DS UK and Plaintiff executed a perpetual Morisky Widget MMAS-8 License (the "2018 License").

102. On information and belief, DS UK fully understood and agreed, by clause 1.A, that the Morisky Widget MMAS Diagnostic Assessments are the exclusive property of Plaintiff and may not be licensed, divulged or distributed without Plaintiff's written permission; by clauses 1.F and 1.G, that all MMAS tests must be scored and coded through the Morisky Widget, whether administered on paper or through the Morisky Widget API; by clause 11.D, that the MMAS coding and scoring criteria are trade secrets of Plaintiff which may NEVER be divulged in any publication, presentation or website without Plaintiff's written permission; by clause 11.F, that the trademark and copyright requirements set out in Appendix I be included in all manuscripts, web postings or other publications containing Morisky Widget and MMAS results, Appendix I requiring the statement that a license agreement is available from MMAS Research LLC; and by clause III.A, that DS UK submit all manuscripts to Plaintiff in advance of publication.

103. On information and belief, by clause 1.B the 2018 License is perpetual and terminable by Plaintiff only for administrative or scientific misconduct, and by clause 11.G Plaintiff reserved the right in case of scientific, administrative or intellectual property misconduct to withdraw permission for use and to pursue all legal remedies.

104. In and from 2018, Plaintiff by Trubow trained and certified some 24 individuals in 2018 and 2019, being in 2018 personnel of pH Associates and clinicians of DS UK, being the persons clause 11.C of the 2018 License authorizes to use the MMAS, and in 2019 personnel of Open Vie and further clinicians of DS UK, the 2019 training of Open Vie being recited by DS UK itself at clause 4.2 of the November 2021 settlement, on the trade secret scoring and coding criteria of the Morisky Widget MMAS-8 tests for the study described below.

105. On November 18, 2021, Plaintiff, Trubow, MORISKY and DS UK executed a settlement agreement compromising a dispute concerning DS UK's scoring, coding and publication of assessments under the 2018 License. That settlement did not terminate the 2018 License. It required at clause 2.1 that all assessments be scored in the Morisky Widget by trained and certified Open Vie personnel, and at clause 2.4 that any draft publication be submitted to Plaintiff for review to verify citations and to ensure that MMAS scoring and coding are not divulged. DS UK paid GBP 4,500 as consideration for twelve months' access to Amazon Web Services for Widget scoring.

106. On information and belief, DS UK is the Sponsor of ClinicalTrials.gov study record NCT05262322, "Study to Evaluate the Use of Direct Oral Anticoagulants in UK Clinical Practice For Patients With a Completed First Stroke Attributable to Nonvalvular Atrial Fibrillation." The record identifies the Responsible Party as "Daiichi Sankyo (Daiichi Sankyo UK Ltd, a Daiichi Sankyo Company)." The party answering to the United States government for that study is therefore Daiichi Sankyo, the parent, with the United Kingdom entity identified

parenthetically.

107. On information and belief, DS JAPAN is the ultimate parent and global headquarters of the Daiichi Sankyo group, setting group corporate strategy, group intellectual property management and group compliance frameworks, and exercising operational and governance control over its European operations through its wholly owned subsidiary Daiichi Sankyo Europe GmbH of Munich, Germany, beneath which DS UK sits as a national affiliate and indirect subsidiary. The December 3, 2021 email described above was addressed across all three tiers of that group at once.

108. On information and belief, the study record for NCT05262322 reports a Study Start of February 15, 2019, a Study Completion of July 9, 2021, and an Enrollment of 234 participants. It was First Submitted on February 21, 2022 and First Posted on March 2, 2022, and was last updated on July 19, 2022.

109. On information and belief, on that record DS UK published, as an outcome measure, "Mean Absolute Morisky Medication Adherence Scale (MMAS-8) Score After First Direct Oral Anticoagulant (DOAC) Dose in Participants Who Are Initiated on Apixaban, Edoxaban, or Rivaroxaban," described as "Morisky Medication Adherence Scale (MMAS-8) range from 0 to 8, where higher scores indicate medication adherence and lower scores indicate nonadherence. Medication adherence will be assessed at 3 and 6 months."

110. ClinicalTrials.gov is a website operated by the United States National Library of Medicine, an agency of the United States government. Plaintiff gave no written permission for that divulgement and received no draft of the record for review.

111. The registration was submitted on February 21, 2022, two days after MMAR published "Buyers beware" and four days after MMAR published "DO NOT contact Trubow to avoid liability claims" on www.moriskyscale.com, and during the twelve-month period for which DS UK had purchased Amazon Web Services access for Widget scoring.

112. On information and belief, the outcome measure DS UK registered is a single mean absolute 0–8 score, which is not a measure the Morisky Widget produces, the Morisky Widget producing instead three quantitative scores. DS UK thus declared publicly, in February and March 2022, an intention to score outside the Morisky Widget.

113. On information and belief, on May 23, 2025, DS UK, by its employees Chris Hatton and Amelia Reed among others, published Uprichard J, et al., "Real-world management, resource use, patient-reported outcomes and adherence in patients receiving DOACs for first stroke attributed to NVAF in secondary care: A UK mixed-methods observational study," (2025) 20(5) PLoS One e0321621, DOI 10.1371/journal.pone.0321621 (the "UK Publication").

114. On information and belief, on the face of the UK Publication the MMAS-8 classification thresholds are published verbatim; item 8 is stated to have been "modified from the original wording"; adherence is reported as a flat 0–8 total; readers are directed that a license is available from "MMAR, LLC., www.moriskyscale.com" and not from Plaintiff; and the retraction of the 2008 validation is cited on the paper's own face.

115. On information and belief, the formal analysis reported in the UK Publication is credited to Mr. Joe Eva, who was among the Open Vie personnel Plaintiff trained and certified on the Morisky Widget in 2019 and who therefore knew the Morisky Widget's required scoring method and that its criteria were Plaintiff's trade secrets. Plaintiff was never provided with the draft for review.

116. The UK Publication directs its readers to www.moriskyscale.com, the same website upon which MMAR had published, throughout the period in which the study was registered and prepared, that the Morisky Widget was "DEAD" and "defunct," that Trubow was "not authorized to license" the instrument, that readers should "DO NOT contact Trubow," and that any person using the Morisky Widget would "be subject to potential copyright and trademark infringement actions against

them."

117. The direction of licensing to MMAR is prima facie evidence that DS UK abandoned or purported to terminate the 2018 License and took in its place a purported license from MMAR. Plaintiff hereby withdraws permission for DS UK's use of the Morisky Widget under clauses 1.B and 11.G of the 2018 License, the conduct alleged constituting scientific and administrative misconduct within the meaning of those clauses.

118. MMAR had and has no right, title or interest in the Morisky Widget capable of being licensed to anyone. MORISKY surrendered his fifty percent ownership interest in the Morisky Widget by his written acceptance of June 21, 2019, in exchange for his withdrawal from Plaintiff, and has held nothing in the Morisky Widget since that date. Whether that interest is characterized as an interest of a joint owner or otherwise, it was conveyed away in a writing signed by MORISKY, and no interest remained in him capable of supporting any license to MMAR or to anyone else. On information and belief, no instrument of any kind has ever conveyed any interest in the Morisky Widget from MORISKY to MMAR. Plaintiff is the owner of Registration No. TX 8-816-517 as confirmed by the United States Court of Appeals for the Ninth Circuit. The bare text of the MMAS-4 and MMAS-8 scales has been held not to be the subject of copyright. Adherence LLC v. CVS Pharmacy, Inc., No. 2:24-cv-01590-JCM-NJK (D. Nev. June 25, 2025). Any license purportedly granted by MMAR was a nullity.

## G. THE AUTHORIZATION, THE ACCEPTANCE OF BENEFITS, AND THE REPUDIATION

119. On information and belief, the sums payable under the Settlement Agreement and under the November 2021 settlement with DS UK were paid to Barta, Jones & Foley, P.C., which received them as counsel for MORISKY and for Plaintiff and distributed the proceeds to MORISKY and to Plaintiff.

120. Those payments were the net proceeds of Claim Settlements within the

meaning of the CR2A, disbursed from an attorney client trust account in the percentages Section II #2 prescribes. MORISKY accepted and retained his distribution from each settlement. He has never restored, tendered, or offered to restore any part of what he received, and has never sought rescission of either settlement in any forum.

121. Having granted the authority, having been a signatory to the settlements negotiated under it, and having accepted and retained the money those settlements produced, MORISKY thereafter told the counterparties to those settlements that Plaintiff had no authority to license or to settle anything, that MMAR was the sole owner and licensor, that the Morisky Widget would be "phased out of existence," and that any person using the Morisky Widget would face federal copyright litigation.

122. Under California Civil Code section 1589, a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting. MORISKY accepted the benefit of both settlements with full knowledge of their terms, having negotiated and in material part drafted them.

123. Under California Civil Code sections 2307 and 2310, an agent's authority may be conferred in advance or conferred by ratification, and a ratification may be made by accepting or retaining the benefit of the act with notice of it. Under section 2311, ratification of part of an indivisible transaction is a ratification of the whole. By accepting and retaining the settlement proceeds, MORISKY ratified in full the authority under which Plaintiff and Mr. Hoeller acted, and is precluded from asserting, as against Plaintiff or as against any counterparty, that Plaintiff lacked authority to pursue, settle or license the claims the Infringement Authorization identified.

124. Under California Civil Code section 1691, a party seeking rescission must restore to the other party everything of value received, or offer to do so,

promptly upon discovering the facts entitling him to rescind. MORISKY did neither. He retained the consideration and unilaterally announced different terms. That is not rescission; it is repudiation while holding the benefit.

125. MORISKY had no power to alter either settlement unilaterally in any event. Section 10 of the Settlement Agreement provides that no term may be altered, changed, modified, waived or discharged except by a writing signed by all of the Parties. Clause 10.1 of the November 2021 settlement with DS UK provides that any variation shall take effect only if made in writing signed by the Parties. No such writing was ever made. The substitution of the MMAR platform for the Morisky Widget, and the announced phase-out of the Morisky Widget, were attempts to rewrite both contracts by announcement.

126. DS UK likewise accepted the benefit of the November 2021 settlement. It obtained the release for which it bargained, and it paid GBP 4,500 for and received twelve months of Amazon Web Services access for scoring in the Morisky Widget commencing on the date of that agreement. Under Civil Code section 1589 its acceptance of those benefits was a consent to the obligations arising from the same instrument, including the obligation at clause 2.1 that all assessments be scored in the Morisky Widget by trained and certified personnel and the obligation at clause 2.4 to submit any draft publication to Plaintiff in advance of publication.

127. On information and belief, DS UK accepted those benefits while intending not to perform. The study underlying the UK Publication had been completed on July 9, 2021, four months before the settlement was executed; DS UK registered a flat 0–8 outcome measure on ClinicalTrials.gov on February 21, 2022, within the twelve-month access period it had purchased; and it made no or negligible use of that access.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## FRAUD IN THE INDUCEMENT

**(Cal. Civ. Code §§ 1572, 1709, 1710 – As to Defendant MORISKY)**

128. MMAS Research realleges each allegation contained in the preceding paragraphs.

129. In inducing Plaintiff to execute the Settlement Agreement, MORISKY represented, expressly and by his conduct, that the Morisky Widget had no role in the ANAFIE corrective work, that he would perform the re-scoring, re-coding and certification in the MMAR platform, and that he would assist in reviewing the ANAFIE Publication and drafting any necessary corrigenda.

130. Those representations were false when made. By September 3, 2021 MORISKY had, by his own subsequent account, resolved to phase the Morisky Widget out of existence and to transition its licensees to MMAR. On September 7, 2021 he demanded the MMAR substitution as the price of his signature. On September 24, 2021 he sued Plaintiff to take the Morisky Widget. He executed the Settlement Agreement on October 11, 2021 and published his phase-out notice nineteen days later.

131. A promise made without any intention of performing it is actual fraud within the meaning of California Civil Code section 1572(4). MORISKY never performed the Section 2 obligations and, on information and belief, never intended to perform them.

132. MORISKY further concealed material facts he was bound to disclose. He was Plaintiff's co-party in the negotiation, represented by the same counsel. He did not disclose his intention to phase out the Morisky Widget, that the foundational validation of the instrument had been publicly challenged on August 21, 2021, or that he had prepared a written defense of it on September 7, 2021.

133. Plaintiff reasonably relied upon those representations and that silence in executing the Settlement Agreement and in forgoing its claims, and has been damaged thereby in an amount to be proven at trial. The conduct alleged was oppressive, fraudulent and malicious within the meaning of California Civil Code

section 3294, entitling Plaintiff to exemplary damages.

**SECOND CLAIM FOR RELIEF**

**RESCISSION**

**(Cal. Civ. Code §§ 1688, 1689 – As to Defendants DS JAPAN, IQVIA JAPAN, IQVIA US, MORISKY)**

134. MMAS Research realleges each allegation contained in the preceding paragraphs.

135. Plaintiff's consent to the Settlement Agreement was obtained through the fraud of MORISKY, a party to the contract. Rescission is available under section 1689(b)(1) where consent was obtained through fraud exercised by or with the connivance of the party as to whom rescission is sought, or of any other party to the contract jointly interested with such party.

136. MORISKY was jointly interested with DS JAPAN and IQVIA JAPAN with respect to the Section 2 corrective work. He contracted to perform that work for them for consideration of $8,000 and released DS from future claims in his own right.

137. That joint interest is established by conduct. MORISKY and MMAR solicited DS JAPAN directly, in Tokyo, on December 3 and 5, 2021, to abandon the Morisky Widget and transition to the MMAR Digital Platform. The study for which DS JAPAN is the Responsible Party of record on ClinicalTrials.gov thereafter published, in May 2025, that a license for the instrument was available from MMAR.

138. Further and in the alternative, the release at Section 3 never took effect. It is conditioned upon "receipt and clearing of the payment referred to in Paragraphs 1 and 2." On information and belief, the Paragraph 2 prepayment was never made and the Section 2 work was never performed, and the condition precedent to the release has not been satisfied.

139. Further and in the alternative, there has been a failure of consideration within the meaning of section 1689(b)(2), in that the corrective re-scoring and

publication assistance that formed a material part of the consideration were never rendered.

140. Plaintiff anticipates that Defendants may rely upon the affiliate language in Section 3 to contend that DS UK is released. That contention fails. The release is limited by its own terms to claims connected with the Study, defined in the Settlement Agreement as the ANAFIE Registry, the license dated July 19, 2016, and the draft complaint of August 11, 2021. The claims pleaded against DS UK arise from a different study, a different license, and a different publication.

141. Plaintiff is ready, willing and able to restore to Defendants everything of value received under the Settlement Agreement upon rescission, as required by California Civil Code section 1691.

142. MORISKY, by contrast, has restored nothing. Having accepted and retained the proceeds of both settlements, he is precluded by California Civil Code sections 1589, 2310 and 2311 from asserting that Plaintiff lacked authority to negotiate or settle the claims the Infringement Authorization identified, and by section 1691 from treating either settlement as rescinded while retaining its consideration.

**THIRD CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(As to Defendants MORISKY and DS UK)**

143. MMAS Research realleges each allegation contained in the preceding paragraphs.

144. This claim for relief for breach of contract is established by the prima facie elements of (1) existence of a valid contractual obligation, (2) performance by the plaintiff, (3) breach by the defendant, and (4) resulting damages to plaintiff.

145. A valid contractual obligation was established by the execution of the Settlement Agreement between Plaintiff, MORISKY, DS JAPAN and IQVIA JAPAN. In the alternative to rescission, and if the Settlement Agreement stands,

MORISKY breached it by failing to re-score, re-code and certify the MMAS-8 tests, by failing to review the ANAFIE Publication for citation accuracy, and by failing to draft or approve any corrigendum addressing the MMAS-8, notwithstanding that his counsel affirmed the agreement on April 25, 2022.

146. MORISKY further breached the implied covenant of good faith and fair dealing by threatening the counterparties with federal copyright litigation if they used the Morisky Widget, thereby making the contract's corrective purpose impossible to achieve.

147. A valid contractual obligation was established by the execution of the perpetual 2018 License between Plaintiff and DS UK. Plaintiff performed all conditions on its part, including training and certifying some 24 individuals on the Morisky Widget and providing Widget scoring access through Amazon Web Services.

148. Defendant DS UK breached the 2018 License in breach of clause 11.D by divulging Plaintiff's coding and scoring criteria on the ClinicalTrials.gov website in and before July 2022 and again in the UK Publication in May 2025, in each case without Plaintiff's written permission.

149. Defendant DS UK breached the 2018 License in breach of clauses 1.F and 1.G by scoring and coding the assessments otherwise than through the Morisky Widget, as a flat 0–8 total upon an instrument whose item 8 had been modified, notwithstanding that Plaintiff had trained and certified 24 individuals to score through the Morisky Widget for that very study and that DS UK had paid for Widget scoring access.

150. Defendant DS UK breached the 2018 License in breach of clause 11.F by omitting the required attribution and directing licensing to MMAR rather than to Plaintiff, and in breach of clause III.A by failing to submit the manuscript of the UK Publication to Plaintiff in advance of publication.

151. Defendant DS UK further breached the November 2021 settlement by

failing to score the assessments in the Morisky Widget as clause 2.1 required and by failing to submit any draft publication to Plaintiff as clause 2.4 required. Having accepted the release and the twelve months of Amazon Web Services scoring access for which it paid, DS UK consented under California Civil Code section 1589 to the obligations arising from that instrument, and could not vary them except by a writing signed by the parties as clause 10.1 requires.

152. As a result of these breaches, MMAS Research has suffered damages, including but not limited to loss of revenue, reputational harm, and the unauthorized dissemination of proprietary information. Plaintiff seeks compensatory damages, injunctive relief to prevent further breaches, and any other relief deemed just and proper by the Court.

**FOURTH CLAIM FOR RELIEF**

**COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 101, ET SEQ.**

**(As to Defendants DS UK and MMAR)**

153. MMAS Research realleges each allegation contained in the preceding paragraphs.

154. At all times relevant hereto, MMAS Research was the owner of all copyright rights or rights to assert copyright claims for the Morisky Widget, together with the translations deposited with Registration No. TX 8-816-517. For the avoidance of doubt, Plaintiff does not rely for this claim upon copyright in the bare text of the MMAS-4 or MMAS-8 scales.

155. MMAS Research has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101, et seq., and all other laws governing copyright.

156. At the time of the UK Publication, DS UK held no license from Plaintiff entitling it to reproduce, distribute or publicly display the Morisky Widget, having abandoned or purported to terminate the 2018 License and taken in its place a purported MMAR license that conveyed no right; further or alternatively, Plaintiff has withdrawn permission for cause under clauses 1.B and 11.G.

157. MMAS Research is informed and believes and thereon alleges that DS UK has, without authorization, infringed the Morisky Widget copyright by using, copying, counterfeiting, distributing, or otherwise exploiting the same contrary to the limited-use license, and by exploiting the Morisky Widget MMAS-8 in the course of a publication.

158. The acts of infringement alleged include acts occurring within the United States. DS UK caused Plaintiff's protected material to be transmitted to and published upon ClinicalTrials.gov, a website operated within the United States by the National Library of Medicine, an agency of the United States government. The UK Publication was published by the Public Library of Science, a publisher organized and headquartered in San Francisco, California, and is distributed from servers within the United States. The Morisky Widget is hosted upon Amazon Web Services infrastructure within the United States, to which DS UK purchased and was granted access for twelve months commencing November 18, 2021. And the false attribution of licensing authority appearing in both Publications directs readers within the United States to MMAR, a California limited liability company, and to a website operated within the United States.

159. MMAR is liable for that infringement directly, by reproducing and deploying Plaintiff's protected work in the MMAR Digital Platform; contributorily, by purporting to license a work it did not own with knowledge of the infringing activity; and vicariously, having the right and ability to control the use it purported to authorize and a direct financial interest in that use.

160. Each act of infringement by the Defendants was committed with knowledge of Plaintiff's copyright ownership and with the intent of deriving commercial gain and causing harm to MMAS Research, constituting willful infringement. MMAR and MORISKY knew that Registration No. TX 8-816-517 stood in Plaintiff's name and said so in writing. DS UK was informed of Plaintiff's claim of right by the correspondence of December 3 and 5, 2021 addressed to its

solicitors and to the individual who had executed its settlement with Plaintiff three weeks earlier.

161. Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per work infringed for Defendants' willful copyright infringement pursuant to 17 U.S.C. § 504(c)(2), plus attorneys' fees and costs pursuant to 17 U.S.C. § 505, and to injunctive relief pursuant to 17 U.S.C. § 502.

**FIFTH CLAIM FOR RELIEF**

**FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION**

**(17 U.S.C. § 1202(a) – As to Defendants DS UK, MMAR and MORISKY)**

162. MMAS Research realleges each allegation contained in the preceding paragraphs.

163. The identification of the licensor of a copyrighted work, and the terms and conditions for its use, constitute copyright management information within the meaning of 17 U.S.C. § 1202(c).

164. The statement in the UK Publication that a license is available from "MMAR, LLC., www.moriskyscale.com" is false. MMAR held no right capable of being licensed. The true licensor of the Morisky Widget is Plaintiff.

165. MMAR and MORISKY provided that false copyright management information, and DS UK distributed it, knowingly and with the intent to induce, enable, facilitate or conceal infringement. MMAR and MORISKY originated the false attribution and pressed it upon DS UK in December 2021 and again in April 2022; DS UK published it in May 2025 with knowledge of Plaintiff's competing claim of right.

166. Plaintiff is entitled to actual damages and the violators' profits or, at its election, statutory damages under 17 U.S.C. § 1203(c)(3)(B), together with costs and attorneys' fees under 17 U.S.C. § 1203(b)(4)–(5).

**SIXTH CLAIM FOR RELIEF**

**TRADE SECRET MISAPPROPRIATION, DTSA**

**(As to Defendants DS UK, MMAR and MORISKY)**

167. MMAS Research realleges each allegation contained in the preceding paragraphs.

168. Plaintiff MMAS Research possesses and vigorously asserts trade secret rights in the MMAS Research Widget Code, including its proprietary MMAS scoring and coding algorithms. These trade secrets are not generally known to others in the industry and provide MMAS Research with a significant competitive advantage. MMAS Research has consistently implemented robust measures to maintain the secrecy of this information, including strict confidentiality terms in its licenses, limited access protocols, and secure storage systems.

169. Under the Defend Trade Secrets Act, 18 U.S.C. § 1839(3), a trade secret consists of three elements: (1) information; (2) that is valuable because it is unknown to others; and (3) that the owner has attempted to keep secret. A plaintiff must prove: (1) that the plaintiff possessed a trade secret; (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff. Inteliclear, LLC v. ETC Global Holdings, Inc., 978 F.3d 653 (9th Cir. 2020).

170. The trade secrets include, but are not limited to, the specific scoring and coding algorithms of the MMAS Widget Code software, including its classification thresholds, its fractional treatment of item 8 and the reverse polarity of item 5.

171. Defendant DS UK misappropriated MMAS Research's confidential, proprietary, and trade secret information by disclosing, without authorization, Plaintiff's proprietary MMAS Widget scoring and coding criteria on the ClinicalTrials.gov website and in the UK Publication, having acquired those criteria under the 2018 License and through the training and certification Plaintiff provided.

172. Plaintiff does not assert this claim against DS JAPAN or IQVIA JAPAN. Those Defendants administered the MMAS-8 in the ANAFIE Registry

under a license dated July 19, 2016 to which Plaintiff was not a party, and Section 2 of the Settlement Agreement recites that no MMAS Research Widget software was used by them during that study. The claims Plaintiff asserts against DS JAPAN, IQVIA JAPAN and IQVIA US are pleaded in the Second and Ninth Claims for Relief and arise from the Settlement Agreement and from conduct occurring after its execution.

173. Defendants MMAR and MORISKY misappropriated the same trade secrets by offering to re-score and re-code MMAS-8 tests in the MMAR Digital Platform, a use of Plaintiff's methodology outside any license.

174. This misappropriation was intentional, knowing, willful, and malicious. As the direct and proximate result of Defendants' misconduct, MMAS Research has suffered and, if Defendants' conduct is not enjoined, will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. MMAS Research seeks all remedies available under the Defend Trade Secrets Act, including monetary damages, exemplary damages for willful and malicious misappropriation, attorneys' fees, and an injunction against further misappropriation.

**SEVENTH CLAIM FOR RELIEF**

**FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)**

**(As to Defendants MMAR and MORISKY)**

175. MMAS Research realleges each allegation contained in the preceding paragraphs.

176. MMAR and MORISKY made false and misleading statements of fact in commercial advertising and promotion on www.moriskyscale.com, a commercial site offering MMAS licenses for sale, and in communications to actual and prospective licensees. Those statements included that MMAR "is the sole owner/licensor of the MMAS 4 and 8 scales"; that the Morisky Widget was "DEAD," "defunct" and "illegally copyright-registered"; that Plaintiff and Trubow

were "not authorized to license" the instrument; that readers should "DO NOT contact Trubow"; and that any person using the Morisky Widget "will be subject to potential copyright and trademark infringement actions against them."

177. Those statements were false or misleading and material. They deceived or had the tendency to deceive a substantial segment of their audience, namely the researchers, sponsors and institutions who license medication-adherence instruments.

178. The statements were made in interstate commerce and in connection with the promotion of MMAR's competing platform, and were designed and calculated to divert Plaintiff's licensees to MMAR.

179. MMAS Research has been injured in its business and reputation and is entitled to damages, MMAR's profits, injunctive relief, and, this being an exceptional case, attorneys' fees under 15 U.S.C. § 1117.

**EIGHTH CLAIM FOR RELIEF**

**INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AND BUSINESS EXPECTANCY**

**(As to Defendants MMAR and MORISKY)**

180. MMAS Research realleges each allegation contained in the preceding paragraphs.

181. "California recognizes a cause of action against noncontracting parties who interfere with the performance of a contract." Redfearn v. Trader Joe's Co. (2018) 20 Cal.App.5th 989, 997.

182. "The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Pacific Gas & Electric Co. v. Bear Stearns & Co. (1990) 50

Cal.3d 1118, 1126.

183. As established above, MMAS Research had valid contracts with DS JAPAN and IQVIA JAPAN, being the Settlement Agreement, and with DS UK, being the 2018 License and the November 18, 2021 settlement, together with perpetual Morisky Widget licenses held by licensees worldwide.

184. MMAR and MORISKY knew of those contracts. MORISKY was a party to two of them.

185. By the emails of December 3 and 5, 2021, the letter of April 21, 2022, and the published notices on www.moriskyscale.com, MMAR and MORISKY intentionally induced the counterparties to abandon Plaintiff's contractual regime, to cease using the Morisky Widget, and to look to MMAR instead, including by threatening them with federal copyright litigation if they used the Morisky Widget.

186. Performance was thereby prevented and made more expensive and difficult. The corrective re-scoring required by Section 2 of the Settlement Agreement was never performed. DS UK registered a flat outcome measure two days after MMAR published "Buyers beware." Both Publications issued attributing licensing to MMAR.

187. MMAS Research had economic relationships with its existing and prospective Widget licensees worldwide carrying the probability of future economic benefit, including renewal licenses, per-administration fees, and training and certification revenue. MMAR and MORISKY knew of those relationships and disrupted them by wrongful conduct independently actionable as alleged above.

188. Trubow and MMAS Research have lost expected revenue resulting from the intentional tortious actions of Defendants in a sum to be proven at trial. Plaintiff seeks compensatory damages for economic harm, punitive damages for malicious conduct, and injunctive relief to prevent further interference.

## NINTH CLAIM FOR RELIEF

## DECLARATORY RELIEF

**(28 U.S.C. §§ 2201–2202 – As to All Defendants)**

189. MMAS Research realleges each allegation contained in the preceding paragraphs.

190. An actual and justiciable controversy exists between Plaintiff and Defendants concerning (a) whether the release at Section 3 of the Settlement Agreement ever took effect; (b) whether MMAR held any right capable of being licensed to any Defendant or any other person; (c) whether DS UK held any license entitling it to reproduce or publish the Morisky Widget at the date of the UK Publication; and (d) whether Plaintiff is the owner of the Morisky Widget and of Registration No. TX 8-816-517; and (e) whether MORISKY, having executed the Infringement Authorization and having accepted and retained the proceeds of the settlements negotiated under it, has ratified Plaintiff's authority and is precluded from denying it.

191. Plaintiff seeks a declaration that the condition precedent to the Section 3 release was never satisfied and the release never took effect; that any license purportedly granted by MMAR in respect of the Morisky Widget is a nullity; that DS UK held no license at the date of the UK Publication; and that Plaintiff is the owner of the Morisky Widget.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court Enters Judgment in Plaintiff's favor and against Defendants as follows:

A. For rescission of the Settlement Agreement and restoration of the parties to their positions prior to its execution;

B. For a declaration that the release at Section 3 of the Settlement Agreement never took effect for want of the condition precedent; that any license purportedly granted by MMAR in respect of the Morisky Widget is a nullity; and that Plaintiff is the owner of the Morisky Widget and of United States Copyright Registration No. TX 8-816-517; and that by executing the Infringement

Authorization and thereafter accepting and retaining the proceeds of the settlements negotiated under it, MORISKY ratified Plaintiff's authority to pursue, settle and license the claims that Authorization identified;

C. For actual damages in an amount according to proof at trial, and for any additional profits attributable to infringements of Plaintiff MMAS Research's copyright in the Morisky Widget, in accordance with proof at trial;

D. For statutory damages for copyright infringement and/or willful copyright infringement by Defendants, and for statutory damages under 17 U.S.C. § 1203(c)(3)(B);

E. For exemplary damages under California Civil Code sections 3294 and 3426.3 and under 18 U.S.C. § 1836(b)(3)(C);

F. For issuance of preliminary and permanent injunctive relief against Defendants, and each of them, and their respective officers, agents, representatives, servants, employees, attorneys, successors and assigns, and all others in active concert or participation with Defendants, enjoining and restraining them from: using the Morisky Widget copyrighted work until a license is obtained; representing that MMAR owns or may license the Morisky Widget; representing that Plaintiff is not authorized to license it; threatening any person with infringement proceedings for using it; and further disclosing Plaintiff's scoring and coding criteria, including the maintenance on websites, posted on the Internet, or in any publication, articles, and reports described herein;

G. Order that Defendants take all steps within their power to procure the correction or retraction of the ANAFIE Publication and the UK Publication, including submission of a corrigendum addressing the scoring, the attribution, and the retracted validation;

H. Order that Defendants file with this Court and serve upon Plaintiff within thirty (30) days after service on Defendants of an injunction in this action, a report by Defendants, under oath, setting forth that Defendants have complied with the

injunction, as well as the steps they have taken to comply;

I. For costs of suit incurred;

J. For attorneys' fees;

K. For prejudgment interest in the amount of ten percent (10%) per annum or the maximum amount allowed by law; and

L. For such other and further relief, the Court deems just and proper.

Respectfully submitted,

**HANKIN PATENT LAW, APC**

Dated: September 9, 2026

By: /Marc E. Hankin/

Marc E. Hankin, Esq.
Attorneys for Plaintiff,
**MMAS RESEARCH LLC**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable in this action.

**HANKIN PATENT LAW, APC**

Dated: September 9, 2026

By: /Marc E. Hankin/

Marc E. Hankin, Esq.
Attorneys for Plaintiff,
**MMAS RESEARCH LLC**